IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>vs.<br><br>MICHAEL Z. PETERSON,<br><br>      Defendant. | 8:15CV00211<br><br>COMPLAINT |

The United States of America, by and through Deborah R. Gilg, United States Attorney for the District of Nebraska, and the undersigned Assistant United States Attorney, brings this action for triple damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq.* and, in the alternative, for repayment under theories of payment by mistake and unjust enrichment.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 31 U.S.C. § 3730(a) and 28 U.S.C. § 1345.

2. Venue is proper in the District of Nebraska pursuant to 31 U.S.C. § 3732(a), 28 U.S.C. § 1391(b), and 28 U.S.C. § 1395(a).

## PARTIES

3. Plaintiff is the United States of America on behalf of the United States Railroad Retirement Board ("RRB").

4. Defendant is Michael Z. Peterson, an individual who, at all times relevant to this Complaint, resided in Nebraska.

## BACKGROUND

5. The Railroad Unemployment Insurance Act, as amended (45 U.S.C. § 351 *et seq.*), provides federal benefits for unemployment and sickness for qualified railroad employees. The program is administered by the RRB and financed by taxes paid by railroad employers.

6. To qualify for federal unemployment benefits, unemployed railroad workers who meet the income and resource requirements of the program must disclose to the RRB any employment and income which might affect the claimant's entitlement to benefits. Benefits cannot be claimed or paid for any date which the claimant worked, accrued, or received compensation from any employer, including non-railroad employers.

7. To be eligible for sickness benefits, a qualified employee must be unable to work because of sickness or injury and must disclose to the RRB any dates he/she works, receives pay, or other remuneration. Benefits cannot be claimed or paid for any date which the claimant received wages, salary, pay for lost time, vacation pay, holiday pay, military reservist pay, pay under a wage continuation plan, sick pay, or other remuneration from railroad and non-railroad employment.

8. Defendant was employed by the Union Pacific Railroad as a laborer and was discharged from his position or about October 20, 2009. Defendant's railroad service enabled him to be eligible to collect RRB sickness and unemployment insurance benefits during his period of unemployment.

## DEFENDANT'S APPLICATION FOR SICKNESS BENEFITS

9. On or about October 30, 2009, Defendant submitted RRB Form SI-1a "Application "Application for Sickness Benefits" and was given a copy of RRB Booklet UB-11, "Sickness

Benefits for Railroad Employees", which described the rules and reporting requirements of collecting sickness benefits.

10. On the application Defendant acknowledged: "I certify that I understand and agree to the requirements of Booklet UB-11. I know that disqualification and civil and criminal penalties may be imposed on me for false or fraudulent statements or claims or for withholding information to get benefits from the RRB. I affirm that that the information given on this form is true, correct and complete."

11. RRB Booklet UB-11 stated, in part:

> To receive sickness benefits you must:
> - **be unable to work** due to sickness, injury, pregnancy, or the birth of a child;
> - **receive no wages, salary, pay for time lost, vacation pay, holiday pay, military reservist pay, pay under a wage continuation plan, sick pay or other remuneration from railroad or nonrailroad employment** for the days you claim benefits. You must report such pay on your claim.

RRB Booklet UB-11 further warned: "You will be disqualified for both **unemployment** and **sickness** benefits for 75 days if you make a false or fraudulent statement or claim in order to receive benefits. You may also be subject to fine or imprisonment. The RRB conducts checks, including computer matching checks, with State and Federal agencies as well as railroads, in order to detect fraudulent benefit claims."

12. After initial application, and in order to collect sickness benefits, an applicant must submit RRB Form SI-3, "Claim For Sickness Benefits," every two weeks.

13. Defendant was employed by B 4 Grain, Inc. from on or about November 23, 2009, 2009, through June 20, 2010. Additionally, Defendant was employed by Korty Land Improvement LLC from on or about June 28, 2010, through December 31, 2010. Defendant

knew he was employed, failed to reveal his employment to the RRB, and continued to submit claims for sickness benefits.

14. For the sickness insurance claim period beginning November 18, 2009, through the claim period beginning December 2, 2009, and the claim period beginning October 24, 2010, through the claim period beginning December 5, 2010, Defendant submitted six (6) false and fraudulent forms SI-3, "Claim for Sickness Benefits".   On each SI-3 claim form, Defendant provided false information in response to three (3) separate questions.   Defendant failed to mark the days on which he was employed by B 4 Grain Inc. or Korty Land Improvement LLC; Defendant indicated he had not returned to work; and Defendant indicated he had not received any wages (including railroad or nonrailroad) on any day for which he claimed benefits. Finally, Defendant further acknowledged:

> "I certify that I understand and agree to the requirements of Booklet UB-11.   I know that disqualifications and civil and criminal penalties may be imposed on me for false or fraudulent statements or claims or withholding information to get benefits from the RRB.   I affirm that the information given on this form is true, correct, and complete."

15. In seeking and receiving sickness benefits, Defendant concealed material facts, to wit, his non-railroad employment and his earnings therefrom, when he knew or should have known that this employment was material to the RRB.

16. But for Defendant's false statements and claims, he would not have received sickness benefits from on or about the unemployment insurance claim period beginning November 18, 2009, through the claim period beginning December 2, 2009, and the claim period beginning October 24, 2010, through the claim period beginning December 5, 2010.

## DEFENDANT'S APPLICATION FOR UNEMPLOYMENT BENEFITS

17. On or about December 14, 2009, Defendant submitted RRB Form UI-1, "Application for Unemployment Benefits and Employment Service," and was given a copy of RRB Booklet UB-10, "Unemployment Benefit Handbook for Railroad Employees", which describes the rules and reporting requirements of collecting unemployment insurance benefits.

18. On the application Defendant acknowledged:  "I know that I must immediately report to the Railroad Retirement Board any changes which might affect my entitlement to benefits.  I understand that disqualifications and civil and criminal penalties may be imposed on me for false or fraudulent statements or claims or for withholding information to get benefits.  I understand and agree to the requirements set forth in Booklet UB-10."

19. RRB Booklet UB-10 stated, in part:

> To receive unemployment benefits you must:
> - be **unemployed** and receive no wages, salary, pay for time lost, vacation pay, holiday pay, guarantee pay, or other remuneration from railroad or nonrailroad employment for the days you claim benefits.  Under certain conditions, **part-time work** does not affect entitlement to benefits.  However, you must **report all full-time and part-time work you perform** to the Railroad Retirement Board (RRB) on each claim for benefits you file.  The RRB will then determine whether your pay is "subsidiary remuneration" and whether benefits are payable for days on which you worked part-time.

RRB Booklet UB-10 further warned:

> "You will be disqualified for both unemployment and sickness benefits for 75 days if you make a false or fraudulent statement or claim in order to receive benefits.  You may also be subject to fine or imprisonment.  The RRB conducts checks, including computer matching checks, with State and Federal agencies as well as railroads, in order to detect fraudulent benefit claims."

20. In order to receive unemployment benefits, an applicant must submit RRB Form UI-3, "Claim For Unemployment Benefits," every two weeks.

21. Defendant was employed by B 4 Grain, Inc. from on or about November 23, 2009, through June 20, 2010. Additionally, Defendant was employed by Korty Land Improvement LLC from on or about June 28, 2010, through December 31, 2010. Defendant knew he was employed, failed to reveal his employment to the RRB, and continued to submit claims for unemployment benefits.

22. For the unemployment insurance claim period beginning December 14, 2009, through the claim period beginning October 18, 2010, Defendant submitted twenty-three (23) false and fraudulent forms UI-3, "Claim for Unemployment Benefits". On each UI-3 claim form, Defendant provided false information in response to three (3) separate questions. Defendant failed to mark the days on which he was employed by B 4 Grain Inc. or Korty land Improvement LLC; Defendant indicated he had not worked for a nonrailroad employer since his last day of railroad work; and Defendant indicated he had not worked on any day for which he claimed benefits. Finally, in Section 8, Defendant further acknowledged:

> "I certify that I have read Booklet UB-10 and understand it. I know that disqualifications and civil and criminal penalties may be imposed on me for false or fraudulent statements or claims or withholding information to get benefits. The information given on this form is true, correct, and complete."

23. In seeking and receiving unemployment insurance benefits, Defendant concealed material facts, to wit, his non-railroad employment and his earnings therefrom, when he knew or should have known that this employment was material to the RRB.

24. But for Defendant's false statements and claims, he would not have received unemployment insurance benefits from on or about the unemployment insurance claim period beginning December 14, 2009, through the claim period beginning December 18, 2010.

## DAMAGE TO GOVERNMENT

25. For the claim period beginning November 18, 2009, through the claim period beginning December 5, 2010, Defendant submitted a total of twenty-nine (29) false and fraudulent claim forms.

26. As a result of Defendant's actions, the United States has been damaged in the amount of $11,627.16.

## COUNT I

### False Claims Act — False Claims

27. Plaintiff repeats and realleges each allegation set forth above in paragraphs 1 through 26 as if set forth fully herein.

28. By virtue of the acts described above, Defendant knowingly presented, or caused others to present, to an officer, employee or agent of the United States false or fraudulent claims to obtain payment or approval in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733.

29. As used in this count, the term "knowingly" means that a person, with respect to information, (a) has actual knowledge of the information; (b) acts in deliberate ignorance of the truth or falsity of the information; or (c) acts in reckless disregard of the truth or falsity of the information.

30. Plaintiff paid the false or fraudulent claims because of the acts of Defendant and, as a result, the United States has incurred actual damages in the amount of $11,627.16, exclusive of interest and costs.

31. Pursuant to the False Claims Act, 31 U.S.C. § 3729(a)(1), as amended, Defendant may be liable to the United States under the treble damage and civil penalty provision of the False Claims Act for a civil penalty of not less than $5,500 and not more than $11,000 for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of Defendant's action.

## COUNT II

### Payment By Mistake

32. Plaintiff repeats and realleges each allegation set forth above in paragraphs 1 through 26 as if set forth fully herein.

33. Plaintiff made payments on the claims submitted by Defendant under the erroneous belief that the claims for payment were based upon representations which were factually accurate and which represented actual dates of unemployment.

34. Plaintiff's erroneous belief was material to the payments made by Plaintiff to Defendant.

35. Because of these mistakes of fact, Defendant received monies to which he was not entitled.

36. By reason of the overpayments described above, Plaintiff is entitled to damages in the amount of at least $11,627.16.

## COUNT III

### Unjust Enrichment

37. Plaintiff repeats and realleges each allegation set forth above in paragraphs 1 through 26 as if set forth fully herein.

38. Because of Defendant's conduct, Defendant has been unjustly enriched with federal monies which in good conscience he should not be allowed to retain.

8

39. Defendant has been unjustly enriched to the detriment of the United States in the amount of $11,627.16.

## CLAIM FOR RELIEF

WHEREFORE, the United States demands judgment against Defendant as follows:

(a) on Count I (False Claims), judgment against Defendant for treble the government's single damages of $11,627.16, and a $5,500.00 to $11,000.00 penalty per false claim;

(b) on Count II (Payment by Mistake), judgment against Defendant for single damages, pre- and post-judgment interest, and any such further relief as the court deems appropriate; and

(c) on Count III (Unjust Enrichment), judgment against Defendant for single damages, pre- and post-judgment interest, and any such further relief as the court deems appropriate.

The United States of America hereby requests that trial of the above and foregoing action should be held in Omaha, Nebraska, and that the case be calendared accordingly.

        Respectfully submitted,

        UNITED STATES OF AMERICA,
        Plaintiff

        DEBORAH R. GILG,
        United States Attorney
        District of Nebraska

By:    s/Laurie A. Kelly
        Laurie A. Kelly, MA Bar # 557575
        Assistant U.S. Attorney
        1620 Dodge Street, Ste. 1400
        Omaha, NE 68102-1506
        Tel:   (402) 661-3700
        Fax:  (402) 661-3081
        Email:  laurie.kelly@usdoj.gov

Date:   June 10, 2015